## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAQUAN LEWIS | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 25-3870** |
| | : | |
| LIVE! CASINO & | : | |
| HOTEL PHILADELPHIA | : | |

McHUGH, J.                                                                September 30, 2025

### MEMORANDUM

I.     **Facts as Pled**

On July 11, 2025, Plaintiff Naquan Lewis visited Defendant Live! Casino's (herein "Casino") establishment in Philadelphia. Compl. ¶¶ 5, 6, ECF 1. He entered the Casino without a valid photo ID and had $10,000 in cash. *Id.* ¶ 6. Mr. Lewis initially gambled in a high-limit room, at a table that was marked "Closed – Reserved (Choo)." *Id.* ¶ 7. Despite the table being labeled closed, Mr. Lewis was allowed to play and won several hands. *Id.* ¶¶ 7, 8. But after leaving to eat and returning to the same table, Mr. Lewis was not permitted to gamble. *Id.* ¶ 8. Employees told Mr. Lewis different reasons why he was unable to play at the closed table, and did not cite a formal policy. *Id.* ¶ 9. Mr. Lewis subsequently went to gamble on the main floor of the Casino, where he lost all the money he brought. *Id.* ¶ 10.

Casino staff then attempted to collect Mr. Lewis's tax information, but stopped when Pennsylvania Gaming Control Board (PGCB) officials said that proper ID verification was required to collect tax information. *Id.* ¶ 12. As a result, the Casino did not file mandatory IRS currency transaction reports. *Id.* ¶ 13. In addition, Mr. Lewis alleges that he was "not warned" that the Casino might "refuse transactions" because he did not have an ID, and claims that the Casino verbally abused him and ultimately ejected him from the premises. *Id.* ¶¶ 11, 14.

Mr. Lewis has filed suit in this court, seeking $9,000,280 in money damages. He asserts seven claims in his complaint: (1) violation of due process; (2) violation of equal protection; (3) breach of implied contract; (4) violation of federal financial law; (5) violation of PGCB regulations; (6) hostile treatment and retaliation; and (7) malicious conduct under color of state law. Defendant has moved to dismiss.

## II.    Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Because Mr. Ford is pro se, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (internal quotation omitted).

## III.    Discussion

### A.  Claims Brought Under 42 U.S.C. § 1983

Mr. Lewis claims that the Casino violated his due process rights and denied him equal protection, bringing suit under 42 U.S.C. § 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

In determining whether a party is a state actor under § 1983, the Third Circuit applies Fourteenth Amendment state action doctrine. *Leshko v. Servis*, 423 F.3d 337, 339 (3d. Cir 2005) ("We consider actions 'under color of law' as the equivalent of 'state action' under the Fourteenth Amendment.").

There are a variety of tests used to determine whether state action exists. Mr. Lewis asserts that the Casino is a state actor under three theories: public function, entwinement, and state compulsion. Compl. ¶¶ 19-20. I will review each in turn.

### 1. Public Function Test

Mr. Lewis asserts that the Casino is a state actor pursuant to the public function test. "The gravamen of the 'public function' test is whether the government is effectively using the private entity in question to avoid a constitutional obligation or to engage in activities reserved to the government." *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 801-02 (3d Cir. 2001). For this test, "the question is whether the function performed has been traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (internal quotation omitted); *see also Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (The test "asks whether the private entity has exercised powers that are traditionally the *exclusive* prerogative of the state," and courts "emphasize the exclusivity aspect of the test") (internal quotation omitted). The requirements of the public function test are "rigorous" and "rarely satisfied." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir. 2001) (quoting *Mark*, 51 F.3d at 1142). The mere fact that a market or company is heavily regulated—such as with cigarettes or private monopolistic utility companies— does not alone render that activity the exclusive prerogative of the state. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358-59 (1974) (finding that a privately owned Pennsylvania utility was not a state actor); *Brown v. Phillip Morris, Inc.*, No. 98-5518, 1999 WL 783712, at *13 (E.D. Pa. Sept.

22, 1999) (finding that tobacco companies are not state actors), *aff'd*, *Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001).

Here, Defendant is alleged to have operated a casino and taken various actions related to operating the casino, including closing tables and attempting to fill out mandated tax forms. Though the Casino must follow state and federal requirements in engaging in these activities, neither the filling out of tax forms nor the management of gambling tables are—or ever have been—the exclusive prerogative of the state. As such, the Casino is not a state actor under the public function test.

### 2. *Entwinement Test*

Mr. Lewis also asserts that the Casino is a state actor under the entwinement test.

The entwinement test "asks whether 'the nominally private character of the [entity] is overborne by the pervasive entwinement of public institutions and public officials . . . and [thus] there is no substantial reason to claim unfairness in applying constitutional standards to it.'" *P.R.B.A. Corp. v. HMS Host Toll Rds., Inc.*, 808 F.3d 221, 224 (3d Cir. 2015) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001)). The critical question is whether a government entity is "so *pervasively entwined*" with the private actor defendant that the defendant should fairly be treated as a government entity under the Constitution. *Id.* at 225. In determining this, a court's "analysis should also focus on evidence of explicit involvement of the governmental authority in the *specific action* the plaintiffs challenge." *Id.*

Here, the specific actions challenged are the Casino's failure to notify Mr. Lewis of ID-related restrictions, selectively enforcing rules, and denying him access to funds. Compl. at 14.[1] But the Complaint's only allegations of explicit government involvement is that a PGCB official said that Casino staff were violating the law by collecting tax information despite Plaintiff's lack of an ID, causing the staff to cease. *See id.* ¶ 12. Thus, the only government involvement was to prompt the Casino to stop violating the law. The Complaint therefore fails to plead the "pervasive entwinement" required to find the Casino a state actor under this test.

### 3. State Compulsion

Finally, Mr. Lewis argues that the Casino is a state actor under the state compulsion test.

The state compulsion test looks at whether "the private party has acted with the help of or in concert with state officials" to cause a violation of one's constitutional rights. *Mark*, 51 F.3d at 1142 (internal quotation omitted). State action may exist where the state has "compelled the act" or "commanded a particular result." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970); *see also Citizens for Health v. Leavitt*, 428 F.3d 167, 180 (3d Cir. 2005). This requires more than "[m]ere approval of or acquiescence in the initiatives of a private party." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

The Complaint fails to set forth allegations that establish state compulsion. Mr. Lewis does not assert that the Casino requested his tax information despite him lacking an ID because it was compelled or commanded to do so by the state—in fact, government regulations appear to require him to have an identification. *See* 31 C.F.R. § 1010.330. And Mr. Lewis fails to plead facts that

---

[1] Although many statements in the Complaint are designated by numbered paragraphs, some are not. When a statement is not in a numbered paragraph, I will cite to the page numbers prescribed by ECF.

would establish the state compelled or acted in concert with the Casino in its decision to first allow Mr. Lewis to gamble at the closed high-limit table, and then to enforce the closed sign.  As such, the Complaint fails to plausibly allege that the Casino was a state actor under the state compulsion test.

Because the Casino is not a state actor, Plaintiff's § 1983 claims must be dismissed.[2]

**B.  Breach of Implied Contract**

Plaintiff also brings a breach of implied contract claim.  According to Plaintiff, when he first entered the Casino he was allowed to gamble in the high-limit room, at a table marked as reserved.  Compl. ¶ 7.  However, after Plaintiff left to eat and returned, he was no longer permitted to play at the table.  *Id.* ¶ 8.  In sum, Plaintiff appears to assert that the Casino's initial willingness to allow Lewis to play at the closed table created an implied contract, which they subsequently breached when preventing him from returning to the table.  But the facts alleged do not support the creation of an implied contract under Pennsylvania law, and this claim must be dismissed.

There are two types of implied contracts in Pennsylvania—contracts implied in fact and contracts implied in law.  *Dep't of Env't Res. v. Winn*, 597 A.2d 281, 284 n.3 (Pa. Commw. Ct 1991).  I will analyze Mr. Lewis's allegations under both doctrines.

---

[2] The Third Circuit also recognizes a joint participation test for state action: "whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).  This is similar to state compulsion and entwinement but is sometimes considered a separate test.  The Complaint also fails to set forth facts establishing that the Casino, beyond being regulated by the state, acted with the help of or with the joint participation of the state in purportedly violating Mr. Lewis's rights.  As such, the Complaint must also be dismissed under this theory.

6

### 1. *Contract Implied in Fact*

"[A] contract implied in fact arises when the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts." *Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev. Co.*, 90 A.3d 682, 695 (Pa. 2014) (internal quotations omitted). In such a case, there is "an actual contract," but such an agreement is expressed in actions instead of words. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009).

Here, Plaintiff has failed to plead any facts to support the existence of a contract implied in fact. "A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings." *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. Ct. 1984). While "[o]ffer and acceptance need not be identifiable and the moment of formation need not be pinpointed" the circumstances must "show a mutual intention to contract." *Id.* (citations omitted). Mr. Lewis pleads that he was "allowed to enter and gamble in the high-limit room, at a reserved table marked 'Closed – Reserved (Choo),' with no objections from staff." Compl. ¶ 7. But the failure to object to Mr. Lewis playing on a closed table hardly establishes an intention to enter into a contract, let alone an intention to allow Mr. Lewis to continue to play on the closed table indefinitely. Further, Mr. Lewis fails to plead what the terms of such a contract would be, and whether there was mutual consideration as required by Pennsylvania law. *See Glover v. Junior*, 333 A.3d 323, 342 n.13 (Pa. 2025) ("[Implied in fact] contracts must still be supported by consideration.").

Mr. Lewis therefore fails to plead facts that establish an implied in fact contract.

### 2. *Contract Implied in Law*

Contracts implied in law—also called quasi-contracts—are "not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are

obligations created by law for reasons of justice." *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n.7 (Pa. 2007) (internal quotation omitted). "In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001). "The elements of unjust enrichment are (1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. Ct. 2017) (internal quotation omitted).

Mr. Lewis pleads that he "lost his money" playing on the main floor of the Casino after being barred from playing at the reserved table. Compl. ¶ 10. As such, the Casino benefitted financially. But the doctrine of contracts implied in law "does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff," it requires *unjust* enrichment. *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994). Here, Mr. Lewis freely chose to play on the main floor, though it was not his preferred table. He pleads that the odds of winning on the main floor were for some reason less favorable but does not plead any way in which it was unjust or inequitable for the Casino to retain the money Mr. Lewis lost gambling. A gambler takes his chances, and Mr. Lewis lost. There is no basis for him to seek equitable relief.

### C. Violation of Federal Financial Law

Plaintiff also brings suit against the Casino for violation of the federal financial laws. Specifically, Mr. Lewis claims that the Casino violated the Bank Secrecy Act ("BSA")[3] requirements codified at 26 U.S.C. § 6050I and its implementing regulations at 31 C.F.R. § 1020.310 by improperly collecting Lewis's personal tax information and failing to file currency transaction reports. Compl. ¶ 12.

Under 26 U.S.C. § 6050I, any person[4] who receives more than $10,000 in cash in a single transaction must file a tax form with the name, address, and tax identification number of the person from whom the cash was received, among other information. Regulations implementing this requirement mandate that anyone who files tax forms pursuant to § 6050I "verify the identity of the person from whom the reportable currency is received." 31 C.F.R. § 1010.330(e).[5]

Mr. Lewis has alleged that he lost over $10,000 at the Casino, meaning that the Casino was likely subject to § 6050I's reporting requirements. Am. Compl., ECF 7.[6] Though violations of the BSA are primarily enforced through criminal penalties, *see, e.g.*, 26 U.S.C. § 7203 (criminalizing willful violations of § 6050I), Congress created a limited private cause of action for violations of § 6050I. Individuals may file civil actions for damages if a person "willfully files a

---

[3] The BSA requires banks to establish anti-money laundering compliance programs, which are collectively abbreviated "BSA/AML."

[4] The term "person" is defined to include officers and employees of a corporation. 26 U.S.C. § 7343.

[5] Mr. Lewis cites 31 C.F.R. § 1020.310 as the regulation at issue, but this regulation merely cross references subpart C of part 1010. Thus, I will focus on 31 C.F.R. § 1010.330, the relevant regulation in subpart C.

[6] Mr. Lewis filed an "Amended Complaint," containing two handwritten sentences. *See* ECF 7. I will incorporate these as supplements to the original Complaint, as Defendant does. *See* Mot. to Dismiss at 2, ECF 11-1.

fraudulent information return with respect to payments purported to be made to any other person." 26 U.S.C. § 7434(a); *see also id.* § 6724(d)(1) (defining "information return" to include returns required by § 6050I(a)).

The Complaint fails to plead facts that support a claim under the limited private cause of action.  Mr. Lewis asserts that Casino staff collected his tax information without proper identification verification, "and then abruptly halted" when informed that this violated policy. Compl. ¶ 12.  Critically, he asserts that the Casino failed to file the mandated tax form.  *Id.* ¶ 13. Because no return was filed—let alone a return alleged to be fraudulent—as required for a private cause of action, Plaintiff cannot possibly state a cognizable violation of § 6050I or any of its implementing regulations.

### D.  Violation of Pennsylvania Gaming Control Board Regulations

Plaintiff also asserts that the Casino "acted contrary to 58 Pa. Code § 465a.9 and other gaming standards."  Compl. at 14.  58 Pa. Code § 465a.9 sets forth requirements for surveillance systems in casinos.  However, the Complaint sets forth no allegations with respect to the surveillance systems at the Casino that could support a violation.

The Complaint does not describe any other gaming standards the Casino is alleged to have violated.  However, in Plaintiff's Response to the Motion to Dismiss, he asserts that the Casino also violated: (1) 58 Pa. Code § 603a.10(i) (requiring casinos promptly redeem gaming chips presented by a patron in person), (2) 4 Pa. C.S. § 1103 (defining "chip"), and (3) 58 Pa. Code § 812a.10(c) (involving the withdrawal of funds from interactive gaming accounts).  Resp. at 2-3, ECF 14.[7]  But Plaintiff has failed to set forth any factual allegations in his Complaint that would

---

[7] The Response was addressed to Judge Daryl F. Bloom, who is a Magistrate Judge in the Middle District of Pennsylvania, and listed a docket number that corresponds to a different matter Mr. Lewis is litigating

constitute a violation of these requirements.[8]  In addition, Plaintiff fails to set forth any legal basis for his right to bring a private action to enforce these regulations.

As such, the Complaint fails to state a claim under 58 Pa. Code § 465a.9 and other gaming standards, and these claims must be dismissed.

### E.  Hostile Treatment and Retaliation

Plaintiff also brings a claim for hostile treatment and retaliation, asserting that the "Casino host verbally abused and ejected Plaintiff following protected activity."  Compl. at 15.  I will interpret this as alleging a claim under Title II of the Civil Rights Act of 1964.

Title II prohibits discrimination in the "enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation."  42 U.S.C. § 2000a.  While a private cause of action exists for violations of Title II, only preventative relief is available.  42 U.S.C. § 2000a-3(a); *see also Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 420 (3d Cir. 2004) (finding Congress limited "remedies available for violations of Title II of the Civil Rights Act of 1964 to injunctive relief").  Mr. Lewis does not request injunctive relief, he seeks only monetary damages.  Compl. at 15-16.  As such, Mr. Lewis has failed to state a cognizable claim for relief.

Even if Mr. Lewis sought injunctive relief, his claim would be barred at this juncture.  Prior to bringing a civil action, a plaintiff must provide notice to an appropriate state authority if the

---

in the Middle District.  But the Response is clearly intended to be filed in this proceeding, and I will consider it despite these administrative errors.

[8] In fact, Plaintiff asserts that he "ultimately lost his money" gambling on the main floor of the Casino where "odds are statistically less favorable," and would therefore reasonably have no chips to cash out. Compl. ¶ 10.

state has a "law prohibiting such act or practice" and authorizes a state agency to grant relief. 42 U.S.C. § 2000a-3(c). If a plaintiff fails to provide notice to the applicable state agency, their federal action must be dismissed for lack of jurisdiction. *See, e.g.*, *Bradley v. Fam. Dollar, Inc.*, No. 10-2299, 2010 WL 5559519, at *9 (M.D. Pa. Nov. 18, 2010), *report and recommendation adopted*, No. 10-2299, 2011 WL 65761 (M.D. Pa. Jan. 10, 2011) (dismissing Title II claim because plaintiff failed to give proper notice); *Waiters v. Republic Bank*, No. 24-5728, 2024 WL 1928331, at *2 (D.N.J. May 2, 2024) ("Compliance with Section 2000a-3(c) is a mandatory jurisdictional prerequisite and a Title II plaintiff must demonstrate that he or she has satisfied the notice requirement before a federal court has subject matter jurisdiction to hear the plaintiff's claim.") (internal quotation omitted).

Pennsylvania law prohibits places of public accommodation from discriminating against individuals on the basis of race, color, religion, national origin, and other protected characteristics. 43 Pa. Cons. Stat. § 953. And the Pennsylvania Human Relations Commission (PHRC) is a state agency that enforces and provides relief for violations of this law. 43 Pa. Cons. Stat. § 956; *see also* Pennsylvania Human Relations Commission, https://www.pa.gov/agencies/phrc [https://perma.cc/SH36-XVD3]. A plaintiff in Pennsylvania must therefore notify the PHRC of the alleged discrimination prior to filing an action under Title II.

Mr. Lewis has failed to assert that he has notified PHRC prior to commencing this lawsuit, and his Title II claim must be dismissed for lack of jurisdiction.

### F.  Malicious Conduct Under Color of State Law

Mr. Lewis also asserts that the Casino "knowingly acted to deprive Plaintiff of rights through pretextual enforcement of PGCB authority." Compl. at 15.

There is no cause of action for "malicious conduct under color of state law." Construing Mr. Lewis's Complaint liberally, I will assume he intends to bring an action for malicious prosecution[9] and malicious abuse of process. A prima facie element for both types of claims is the initiation of a prosecution against the plaintiff. *See McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009) (asserting a Fourth Amendment malicious prosecution claim requires plaintiff to establish that "the defendants initiated a criminal proceeding"); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000) (noting that criminal proceedings as an element of the common law tort of malicious prosecution in Pennsylvania); *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (" [A] claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.").

Mr. Lewis has not alleged that criminal proceedings have been initiated against him. Because he failed to plead facts that establish a prima facie element, his malicious conduct claim must be dismissed.

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge

---

[9] I will further interpret the Complaint as asserting both a federal and state malicious prosecution claim.